IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Holly Buchanan, | ) | |
| Plaintiff, | ) | Case No. 7:09-cv-1433-JMC-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Marc Kitchens, individually and in his | ) | |
| official capacity as Clerk of Court of | ) | |
| Spartanburg County; Clerk of Court of | ) | |
| Spartanburg County; and Spartanburg | ) | |
| County, | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 41.] Plaintiff filed this action alleging retaliation claims pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

Plaintiff, a former employee of the Spartanburg County Clerk of Court, filed this action on June 1, 2009, alleging Defendants Marc Kitchens ("Kitchens"), the Clerk of Court of Spartanburg County ("the Clerk of Court"), and Spartanburg County ("the County")

---

[1]Although the Complaint's "Cause of Action" section references 29 U.S.C. § 211 (dealing with the collection of data under the Fair Labor Standards Act), 29 U.S.C. § 626 (dealing with recordkeeping, investigation, and enforcement under the Age Discrimination in Employment Act), and 42 U.S.C. § 12117 (dealing with enforcement under the Americans with Disabilities Act) in addition to § 1981 and Title VII, the allegations in the Complaint clarify Plaintiff's causes of action are limited to retaliation claims under § 1981 and Title VII. As Defendants noted in their memorandum in support of the motion for summary judgment, the Complaint contains no allegations regarding wage-based, age-based, or disability-based claims. [Doc. 41-5 at 1–2, n.1.] Moreover, Plaintiff's response in opposition to the motion for summary judgment concedes the case alleges claims pursuant only to § 1981 and Title VII. [Doc. 43-1 at 1, 4.]

(collectively, "Defendants") unlawfully retaliated against Plaintiff by suspending and ultimately terminating her employment.  [Doc. 1.]  The following facts are undisputed[2]:

• Plaintiff was employed by the Clerk of Court and became a Senior Court Clerk on June 10, 2002.  [Doc. 41-5 at 4; Doc. 43-1 at 4; Doc. 41-1 at 27.]

• The Clerk of Court is a department of the County government system.  [Doc. 41-5 at 4; Doc. 43-1 at 4; Doc. 41-2 ¶ 3.]

• As a Senior Court Clerk, Plaintiff's responsibilities included time-clocking and filing legal documents such as pleadings and orders.  [Doc. 41-5 at 5; Doc. 43-1 at 5; Doc. 41-1 at 2–4, 28–29; Doc. 41-3 ¶ 4.]

• The complete and accurate performance of these duties is important to the proper functioning of the Clerk of Court and the County court system because "[j]udges, law clerks, attorneys, and the public rely on the time-clocked and filed documents in determining deadlines, in providing legal advice, and in ensuring compliance with the orders of the court, among other things."  [Doc. 41-5 at 5; Doc. 43-1 at 5; Doc. 41-1 at 2–4, 28; Doc. 41-3 ¶ 4.]

• In 2006, Kitchens, who was the Clerk of Court at the time, emphasized with all Clerk of Court employees the importance of properly time-clocking and filing all legal documents.  [Doc. 41-5 at 5; Doc. 43-1 at 6; Doc. 41-3 ¶ 5.]

---

[2]As noted below, much of Plaintiff's response in opposition is copied substantially verbatim from Defendants' memorandum in support of the motion for summary judgment.  Though Plaintiff attempts to spin the facts included from Defendants' memorandum in her favor [*compare, e.g.*, Doc. 41-5 at 6 ("This led Rhonda Church (Plaintiff's direct supervisor at the time) to issue verbal warnings to Plaintiff on several occasions, with the latest such verbal warning taking place during the week of April 23, 2006."), *with* Doc. 43-1 at 7 ("Rhonda Church (Plaintiff's direct supervisor at the time) verbally harassed Plaintiff on several occasions, which continued to occur during the week of April 23, 2006.")], many of the facts are largely undisputed.  In fact, Plaintiff cites to the exact same evidence in the record to support her spin on the facts.  The Court will include here only those facts that are undisputed.

2

- At that time, Plaintiff was informed that she would be subject to disciplinary action if she filed legal documents without first time-clocking the documents.[3] [Doc. 41-5 at 5; Doc. 43-1 at 6; Doc. 41-3 ¶ 5.]

- In early 2006, Defendants claimed Plaintiff had made a number of errors with respect to filing and clocking legal documents.[4] [Doc. 41-5 at 6; Doc. 43-1 at 7; Doc. 41-1 at 30–46.]

- In late May and early June 2006, Kitchens, Assistant Clerk of Court Gail Moffitt ("Moffitt"), and Plaintiff's supervisor Rhonda Church ("Church") claimed Plaintiff made a number of errors with respect to time-clocking and filing documents. [Doc. 41-5 at 6; Doc. 43-1 at 7; Doc. 41-1 at 5–10, 30–46; Doc. 41-3 ¶ 6.]

- The alleged errors included the following:

  1. Entry of a Hearing Request under the wrong case number in the Clerk of Court's computer system—error discovered after the attorney who filed the Hearing Request called to check on the status of the Request;

  2. Failure to properly time-clock and file a Notice of Motion and Motion, and failure to retain the original copy of the filed document—error discovered after attorney called to inquire about why there had been no activity on the case and to inform the Clerk of Court of the Family Court Judge's instructions;

---

[3]Plaintiff alleges Defendants harassed Plaintiff by informing her she would be subject to disciplinary action if she filed legal documents without first time-clocking them [Doc. 43-1 at 6]; Defendants allege all employees were notified they would be subject to disciplinary action for failing to time-clock legal documents before filing [Doc. 41-5 at 5.] Interestingly, both parties cite to Gail Moffitt's affidavit as support, and Moffitt's affidavit states that all employees were notified of the potential for disciplinary action. [*See* Doc. 43-1 at 6; Doc. 41-5 at 5; Doc. 41-3 ¶ 5.]

[4]Plaintiff appears to allege she did not make the errors because she claims Defendants "harassed the Plaintiff by illegitimately and pre-textually claiming Plaintiff made a number of errors with respect to the simple task of filing and clocking of legal documents – though Plaintiff had been successfully performing such simple tasks during her employment since 2000." [Doc. 43-1 at 7.] In any event, it is undisputed Defendants claimed and informed Plaintiff they believed she made a number of errors.

3

3.      Failure to file and enter a Request for Final Hearing in the Clerk of Court's computer system—error discovered after the hearing was not scheduled after the Request had been filed for over two months;

4.      Failure to time-clock a Motion for and Notice of Temporary Hearing that Plaintiff accepted for filing—error discovered after non-clocked Motion was discovered in the file;

5.      Failure to time-clock a Family Court Judge's Order of Continuance that Plaintiff filed—error discovered when Child Support Payments department returned the non-clocked Order to the Clerk of Court; and

6.      Failure to time-clock a Motion for Relief from Judgment or any of the documents filed therewith—error discovered when Child Support Payments department returned the non-clocked documents to the Clerk of Court.

[Doc. 41-5 at 6–7; Doc. 43-1 at 7–8; Doc. 41-1 at 5–10, 30–46.]

•    Plaintiff received a written reprimand on June 13, 2006.  [Doc. 41-5 at 7; Doc. 43-1 at 8; Doc. 41-1 at 5–10, 30–46; Doc. 41-3 ¶ 7.]

•    Plaintiff's employment was suspended for three days, from June 14–16, 2006. [Doc. 41-5 at 7; Doc. 43-1 at 8; Doc. 41-1 at 5–10, 30–47; Doc. 41-3 ¶ 7.]

•    Plaintiff filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on July 18, 2006.  [Doc. 41-5 at 7; Doc. 43-1 at 8; Doc. 41-1 at 92–93.]

•    Plaintiff's Charge alleged that Spartanburg County had discriminated against her because of her "association or believed association with Black men."  [Doc. 41-5 at 8; Doc. 43-1 at 8; Doc. 41-1 at 92–93.]

- In late July 2006, Plaintiff's supervisor Karen Millwood informed Kitchens and Moffitt about additional alleged clerical errors, including misfiling and failing to time-clock legal documents.  [Doc. 41-5 at 8; Doc. 43-1 at 9; Doc. 41-3 ¶ 10.]

- The alleged errors included failure to properly time-clock, file, and enter the following legal documents into the computer system:

  1. Two Petitions for protective orders and the associated Family Court Orders for Protection from Domestic Abuse;

  2. Documents surrounding a request to remove a child from his mother's custody;

  3. A Notice of Hearing;

  4. A Sherriff's Affidavit of Service;

  5. A Reply Motion for Temporary Relief; and

  6. An Affidavit of Mailing.

  [Doc. 41-5 at 8–9; Doc. 43-1 at 9–10; Doc. 41-1 at 11–18, 48–90; Doc. 41-3 ¶ 10.]

- Plaintiff's employment was terminated on July 31, 2006.  [Doc. 41-5 at 9; Doc. 43-1 at 10; Doc. 41-3 ¶ 11.]

- Between March 2006 and October 2006, three other employees of the Clerk of Court were suspended or terminated for clerical errors.  [Doc. 41-5 at 9; Doc. 43-1 at 11; Doc. 41-3 ¶ 14.]

Plaintiff additionally alleges she was subjected to racially and sexually derogatory statements related to her "legally protected relationships with African-American males (including business relationships with African-Americans who visited the Clerk of Court

department).” [Doc. 43-1 at 5.] Plaintiff allegedly informed her employer[5] that she was in

a hostile/threatening work environment and being treated differently than similarly situated

employees. [Doc. 1 ¶ 8.] Plaintiff further contends she had successfully performed her job

since 2000 [*see, e.g.*, Doc. 43-1 at 6], and the alleged clerical errors were not attributable

to Plaintiff [*id.* at 7, 8, 9].

Defendants filed a motion for summary judgment on March 18, 2011. [Doc. 41.]

Plaintiff filed a response in opposition to the motion on April 14, 2011. [Doc. 43-1.]

However, the Court notes much of Plaintiff's response in opposition is copied substantially

verbatim from Defendant's memorandum in support of the motion for summary judgment,

except Plaintiff uses the same facts and citations to reach the opposite conclusions of

Defendants. [*Compare, e.g.*, Doc. 41-5 at 14

> A plaintiff desiring to seek redress for a governmental
> actor's alleged violation of 42 U.S.C. § 1981 must plead and
> prove her allegations as a claim under 42 U.S.C. § 1983.
> *Karges*, 2010 U.S. Dist. LEXIS 84353, at *38 (*quoting and
> citing Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733
> (1989)). As this Court has recognized, "'[T]he express cause
> of actions for damages created by § 1983 constitutes the
> exclusive federal remedy for violation of the rights guaranteed
> in § 1981 by state governmental units. . . .'" *Id.* (*quoting Jett*,
> 491 U.S. 733) (omission in original). Notwithstanding this
> limitation, Plaintiff has not alleged a § 1983 claim or pled the
> facts or elements necessary to pursue such a claim. Thus,
> Plaintiff's § 1981 claims against the three governmental actors
> "runs afoul of *Jett*" and must be dismissed. *Dennis v. County*

---

[5]It is unclear when Plaintiff complained or whom, specifically, Plaintiff told about the alleged harassment [*see* Doc. 1 ¶ 8 ("Plaintiff, by and through Tony Bell who is Director of the Human Resources Department for the Defendants, informed the Defendants, which also had knowledge via Marc Kitchens who is the Clerk of Court, that Plaintiff was in a hostile/threatening work environment cause by co-employees who treated the Plaintiff differently than similarly situated employees due to Plaintiff's legally protected relationship with African-American males . . . ."); Doc. 43-1 (same)], though her response in opposition alleges she complained to "Defendants including Kitchens" [Doc. 43-1 at 10].

> *of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995 (*citing Jett*, 491 U.S.
> at 701).,

*with* Doc. 43-1 at 15

> A plaintiff desiring to seek redress for a county
> governmental actor's alleged violation of 42 U.S.C. § 1981
> under Title VII must not absolutely plead and prove her
> allegations as a claim under 42 U.S.C. § 1983. *Karges*, 2010
> U.S. Dist. LEXIS 84353, at *38 (*quoting and citing Jett v.
> Dallas Indep. School Dist.*, 491 U.S. 701, 733 (1989)). As this
> Court has recognized, "'[T]he express cause of actions for
> damages created by § 1983 constitutes the exclusive federal
> remedy for violation of the rights guaranteed in § 1981 by state
> governmental units. . . .'" *Id.* (*quoting Jett*, 491 U.S. 733)
> (omission in original). Although not required under 42 U.S.C.
> § 1981, Plaintiff has impliedly alleged a § 1983 claim or pled
> the facts or elements necessary to pursue such a claim –
> Defendants have not sufficiently plead a § 1983 defense.
> Thus, Plaintiff's § 1981 claims under Title VII against the three
> governmental actors does not "run afoul of *Jett*" and must not
> be dismissed. *Dennis v. County of Fairfax*, 55 F.3d 151, 156
> (4th Cir. 1995 (*citing Jett*, 491 U.S. at 701).]

Plaintiff's surreply likewise is copied substantially verbatim from Defendants' reply.

[*Compare, e.g.* Doc. 45 at 9

> Plaintiff has made multiple contentions in both her
> Opposition to Motion for Summary Judgment (Doc. No. 43)
> and memorandum in support thereof (Doc. No. 43-1) that
> misstate (or, at the very least, misapply) applicable case law
> under Title VII and § 1981. First, Plaintiff alleges that "A
> plaintiff desiring to seek redress for a county governmental
> actor's alleged violation of 42 U.S.C. § 1981 under Title VII
> must not absolutely plead and prove her allegations as a claim
> under 42 U.S.C. § 1983." (Doc. No. 43-1, at 15.) Plaintiff
> similarly contends that "a § 1983 claim . . . is not the exclusive
> federal remedy for alleged § 1981 violations by county
> governmental actors." (Doc. No. 43 at 2.)

(footnote omitted), *with* Doc. 46 at 9–10

Plaintiff has made multiple contentions in both her Opposition to Motion for Summary Judgment (Doc. No. 43) and memorandum in support thereof (Doc. No. 43-1) that reasonably states and applies applicable case law under Title VII and § 1981. First, Plaintiff alleges that "A plaintiff desiring to seek redress for a county governmental actor's alleged violation of 42 U.S.C. § 1981 under Title VII must not absolutely plead and prove her allegations as a claim under 42 U.S.C. § 1983." (Doc. No. 43-1, at 15.) Plaintiff similarly contends that "a § 1983 claim . . . is not the exclusive federal remedy for alleged § 1981 violations by county governmental actors." (Doc. No. 43 at 2.)]

The motion is now ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

8

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

9

## DISCUSSION

**Claims Against the Clerk of Court**

Defendants first argue the Clerk of Court should be dismissed because the Clerk of Court is not *sui juris*, rendering it incapable of suing or being sued in its own right. [Doc. 41-5 at 11–12.] The Court agrees the Clerk of Court should be dismissed.

As previously stated, Plaintiff brought this action against Kitchens in his individual capacity and his official capacity, the Clerk of Court, and Spartanburg County. However, the Clerk of Court is not a cognizable legal entity separate from Kitchens in his official capacity. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) (citing *Hancock v. Washtenaw Cnty. Prosecutor's Office*, 548 F. Supp. 1255 (E.D. Mich. 1982); *In re Scott Cnty. Master Docket*, 672 F. Supp. 1152 (D. Minn. 1987)) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."); *Karges v. Charleston Cnty. Sheriff's Office*, No. 2:08-cv-2163, 2010 WL 3270310, at *6 (D.S.C. Aug. 17, 2010). Accordingly, the Court recommends summary judgment be granted as to claims against the Clerk of Court and that the Clerk of Court be dismissed as a named Defendant.

**Claims Against Spartanburg County**

Next, Defendants argue the County should be dismissed because, pursuant to the South Carolina Home Rule Act ("the Act"), the County cannot take any adverse employment actions against employees of an elected official. [Doc. 41-5 at 12–13.] The Court agrees the County should be dismissed.

10

The Act provides that county governments are empowered

> to develop personnel system policies and procedures for county employees by which all county employees are regulated *except those elected directly by the people*, and to be responsible for the employment and discharge of county personnel in those county departments in which the employment authority is vested in the county government. *This employment and discharge authority does not extend to any personnel employed in departments or agencies under the direction of an elected official or an official appointed by an authority outside county government*. . . .

S.C. Code Ann. § 4-9-30(7). The South Carolina Supreme Court has interpreted this provision to hold that county administrators lack the authority to suspend or discharge the employees of an elected official. *Eargle v. Horry Cnty.*, 545 S.E.2d 276, 280 (S.C. 2001). The clerk of court of each county is an elected official whose position was created by Article V, Section 24 of the South Carolina Constitution. *McCormick Cnty. Council v. Butler*, 603 S.E.2d 586, 586 (S.C. 2004). Accordingly, it follows that county administrators lack the authority to suspend or discharge the employees of clerks of court.

Here, Plaintiff alleges she suffered an adverse employment action—the suspension and termination of her employment— at the hands of all Defendants, including the County. [Doc. 1 ¶¶ 9, 11, 15.] However, Plaintiff has failed to allege any facts to support her allegation that the County took an adverse employment action against her. Moreover, as discussed above, the County lacked the authority to suspend or discharge Plaintiff. Therefore, the Court recommends summary judgment be granted as to the claims against the County and that the County be dismissed as a named Defendant.

**Claims Against Kitchens**

Because the Court recommends dismissing the Clerk of Court and Spartanburg County as named Defendants in this case, the Court will now turn to Defendants' arguments related to the claims against Kitchens, both individually and in his official capacity.

### *Section 1981 Retaliation Claim*

Defendants argue Plaintiff's § 1981 claim must be dismissed because Plaintiff failed to (1) plead the violation as a claim under 42 U.S.C. § 1983, and § 1983 provides the exclusive remedy for any violation of Plaintiff's rights protected under § 1981; (2) make a prima facie showing of a § 1983 claim because she has not demonstrated the alleged retaliation was the result of an official policy or custom of discrimination; (3) allege how Kitchens engaged in unlawful actions in his individual capacity; (4) establish the causation element of her prima facie case of retaliation; and (5) demonstrate Defendants' legitimate, non-discriminatory reason for suspending and terminating Plaintiff's employment is pretext for retaliation.  [Doc. 41-5 at 13–20.]

Defendants first argue Plaintiff's § 1981 claim is foreclosed because § 1983 provides the exclusive remedy for any violation of the rights guaranteed in § 1981, and Plaintiff failed to assert a cause of action pursuant to § 1983.  [*Id.* at 14.]  The Court agrees.

In *Jett v. Dallas Independent School District*, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ."

491 U.S. 701, 733 (1989).  Plaintiff does not challenge this holding but instead cites the exact same sentence from *Jett* and then argues, "Although not required under 42 U.S.C. § 1981, Plaintiff has impliedly alleged a § 1983 claim and pled the facts and elements necessary to pursue such a claim," citing no case law to support this argument.  [Doc. 43-1 at 15.]  The Court is aware that some courts have held that subsection (c) of the Civil Rights Act of 1991, which amended § 1981, expressly provides recovery for violations of § 1981 by state actors such that plaintiffs no longer need to rely on the remedial provisions of § 1983 as required by *Jett*.  *See Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) (listing cases).  However, the Fourth Circuit Court of Appeals has held, as to the ruling that § 1983 is the exclusive remedy against a governmental actor for violations of § 1981, "[w]e do not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991, which added subsection (c) to § 1981."  *Id.* (citing 42 U.S.C. § 1981(c)); *see also Karges*, 2010 WL 3270310, at *12 (holding that the plaintiff's § 1981 claims failed because § 1983 is the exclusive remedy against a governmental actor for violations of § 1981); *Cockfield v. S.C. Dep't of Pub. Safety,* No. 05-277, 2007 WL 954131, at *15–18 (D.S.C. Mar. 27, 2007) (granting summary judgment on the plaintiff's § 1981 claims because the plaintiff failed to plead a violation of § 1983); *Norris v. City of Anderson*, 125 F. Supp. 2d 759 (D.S.C. 2000) ("Therefore, Plaintiff's failure to plead a violation of § 1983 deprives the Court of subject matter jurisdiction over any claims Plaintiff may have under § 1981."). Accordingly, the Court recommends summary judgment be granted as to Plaintiff's § 1981 claim against Kitchens because Plaintiff failed to assert a cause of action pursuant to §

13

1983, and § 1983 provides the exclusive remedy for violations of rights guaranteed in §

1981.[6]

### Title VII Retaliation Claim[7]

Under Title VII, an employer is forbidden from taking action that discriminates

against an employee because that employee has either "opposed any practice made an

unlawful employment practice by this subchapter" or has "made a charge, testified,

---

[6]Additionally, even if Plaintiff's claim could be perceived as being brought pursuant to § 1983 [see Doc. 43-1 at 15 (arguing Plaintiff has impliedly alleged a § 1983 claim)], Plaintiff cannot establish a claim of a violation of her rights. The standards applicable to suits under Title VII are also applicable to suits brought under § 1983. Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281 (4th Cir. 1985). As discussed below, the Court finds Plaintiff cannot establish a prima facie case of retaliation or that Defendants' articulated reason for suspending and terminating Plaintiff was a pretext for retaliation; accordingly, Plaintiff's claim pursuant to § 1981 and/or § 1983 fails for the same reasons that she cannot establish her claim under Title VII.

Moreover, to the extent Plaintiff's claim could be perceived as being brought pursuant to § 1983, Plaintiff has failed to demonstrate the alleged violation of her rights was the result of an official policy or custom. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997) (holding a county or other municipality may have § 1983 liability if a "policy" of discrimination is shown); Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding municipalities are liable under § 1983 only for violations of federal law that occur pursuant to official governmental policy or custom). Plaintiff has put forward no evidence of any such policy or custom.

Because the Court has determined Plaintiff's § 1981 claim against Kitchens should be dismissed in its entirety, the Court need not address Defendants' argument that Plaintiff failed to allege how Kitchens engaged in unlawful actions in his individual capacity.

[7]Although Plaintiff's response in opposition appears to argue a claim of race discrimination, as opposed to retaliation, because Plaintiff focuses on the purported hostile work environment and contends Plaintiff was suspended and terminated because of her relationship with African-American males instead of in retaliation for complaining and filing the Charge, Plaintiff's Complaint alleges only a retaliation cause of action. Federal procedure requires only notice pleading—"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, even under this lenient standard, Plaintiff's Complaint fails to set forth a Title VII discrimination claim. At no point does the Complaint explicitly set forth that Plaintiff is asserting a Title VII discrimination claim, nor does it set forth the elements of such a claim. Instead, the Complaint sets forth a single cause of action, albeit under two statutory schemes—§ 1981 and Title VII. The only mention of a hostile work environment is to establish the background facts leading up to why Plaintiff allegedly complained to her employer; accordingly, these facts were included to bolster her claim of retaliation. Nowhere in the Complaint does Plaintiff allege she was suspended or terminated because of her relationship with African-American males. Plaintiff makes this argument for the first time in her response in opposition to the motion for summary judgment. Accordingly, Plaintiff's Complaint alleges only retaliation claims under § 1981 and Title VII. See Patterson v. Spellings, 249 F. App'x 993, 997 (5th Cir. 2007) (citing Greenhill v. Spellings, 482 F.3d 569, 573 (D.C. Cir. 2007) (addressing Title VII breach of contract claim under the Tucker Act and finding district court is not required "to go on a fishing expedition for new claims")) ("Although the facts alleged by [the plaintiff] may be consistent with retaliatory behavior, the district court here could not reasonably be expected to discern a separate, independent retaliation claim.").

assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000d-3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under Title VII.[8] *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000). Under the burden-shifting framework, an employee must first prove a prima facie case of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (setting for the framework for a discrimination, as opposed to a retaliation, claim). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nonretaliatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

----

[8] Plaintiff relies exclusively on the *McDonnell Douglas* burden-shifting scheme in this case. As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff "may 'proceed under [the *McDonnell Douglas*] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.'" *Id.* (quoting *Hill*, 354 F.3d at 285). Here, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of retaliation. Instead, she relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue she can establish a prima facie case of retaliation and that Defendants' articulated legitimate, non-discriminatory reason for suspending and terminating Plaintiff is a pretext for retaliation. [Doc. 43-1 at 18–22.]

If the employer articulates a legitimate, nonretaliatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

       *Prima Facie Case*

       To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218. Defendants do not contest that Plaintiff has satisfied the first two elements of her prima facie case—(1) Plaintiff engaged in protected activity by complaining about race-related comments[9] and by filing her charge of discrimination, and (2) Plaintiff was suspended and terminated. [Doc. 41-5 at 17.] Instead, Defendants contend Plaintiff cannot establish the third element of her prima facie case—that a causal connection

---

[9]The Court notes that, although Defendants do not specifically challenge Plaintiff's assertion that she complained about race-related comments, their memorandum in support of the motion for summary judgment states Plaintiff "*allegedly* complain[ed] about race-related tensions between her and her co-workers." [Doc. 41-5 at 17.] After a review of the record before it, the Court is unable to determine when or to whom Plaintiff complained of race-related comments. The affidavit of Gail Moffitt ("Moffitt"), Assistant Clerk of Court, states that, at the time Plaintiff was suspended, neither Moffitt nor Kitchens knew of any complaints by Plaintiff or issues related to race-related comments. [Doc. 41-3 ¶ 9.] Further, at the time Plaintiff was terminated, Plaintiff had not complained to Moffitt or Kitchens about race-related comments. [*Id.* ¶ 13.] The excerpts of Plaintiff's deposition submitted by Defendants in support of their motion for summary judgment contains no reference to Plaintiff's alleged complaints. [Doc. 41-1.] Plaintiff failed to submit additional excerpts from her deposition and did not direct the Court to any evidence that Plaintiff complained, including when she complained or to whom she complained. The only additional evidence Plaintiff provided to the Court was her own affidavit, which includes a recitation of paragraph 8 of the Complaint, stating generally that Plaintiff informed Defendants that she was in a hostile/threatening work environment, but failing to specify to whom she complained or when, *see supra*, note 2. [Doc. 43-2 ¶ 4.] Accordingly, the Court is not convinced Plaintiff has satisfied the first element of her prima facie case with respect to her suspension, which Plaintiff alleges was in retaliation for her complaining about race-related comments.

existed between the protected activity and the asserted adverse action.  [*Id.*]  The Court agrees.[10]

To prove a causal connection existed between the protected activity and the asserted adverse action, a plaintiff must show the employer took the adverse action "'*because* the plaintiff engaged in protected activity.'"  *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).  Plaintiff has failed to provide any evidence that she was suspended and terminated *because* she either complained of race-related comments or filed an EEOC charge.

In response to Defendants' argument that Plaintiff cannot demonstrate the existence of a causal connection, Plaintiff argues,

> The allegations in Plaintiff's Complaint and the facts that Plaintiff has provided through the discovery process demonstrate that the Defendants suspended or terminated Plaintiff's employment because of her protected activity. Plaintiff relies upon her testimony as well as circumstances that she engaged in protected activity and that Defendants took the adverse employment actions against her as "evidence" that the adverse action was based on the protected activity. Although unsupported, conclusory allegations are insufficient to show the connection between the protected activity and the adverse action—contrary to Plaintiff's allegations, the occurrence of event A and the occurrence of event B does by itself establish that event **B** resulted from event A or that event A in any way led to event B. Based upon the circumstances corroborated by her testimony, Plaintiff has thus made her *prima facie* showing of retaliation, and Defendants are not entitled to judgment as a matter of law.

---

[10] Additionally, Plaintiff's Title VII claims against Kitchens in his individual capacity must be dismissed because Title VII does not allow for individual liability.  *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (holding there is no individual liability under the ADEA or Title VII).  Accordingly, the Court analyzes Plaintiff's Title VII claims against Kitchens in his official capacity.

[Doc. 43-1 at 19 (emphasis in original).]  However, Plaintiff fails to direct the Court to any such evidence or testimony indicating Defendants suspended or terminated Plaintiff's employment because of her protected activity, instead relying only on her own conclusory statements that she was suspended and terminated because of her protected activity.[11] Such conclusory statements, without any evidentiary support, are insufficient to survive summary judgment.  *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (citing *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994)) (holding that conclusory statements, without specific evidentiary support, do not support a claim for discrimination); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (citations omitted) (holding that "unsubstantiated allegations" are insufficient to defeat summary judgment); *Cook v. CSK Transp. Corp.*, 988 F.2d 507, 513 (4th Cir. 1993) ("[U]nsupported allegations do not establish a prima facie case of race discrimination under Title VII.").

Moreover, even if Plaintiff had presented sufficient evidence to establish a prima facie case of retaliation, she has failed to present any evidence of pretext following Defendants' articulated legitimate, nonretaliatory explanation for suspending and terminating Plaintiff's employment—because of clerical errors regarding filing and time-clocking legal documents.  In her affidavit, Moffitt avers Plaintiff received a written reprimand and suspension "[b]ecause Ms. Church had previously provided several verbal warnings to [Plaintiff] regarding improper filing and failing to ensure that filed documents

---

[11] Plaintiff also appears to argue that because her suspension and termination followed her alleged complaints and the Charge, the disciplinary actions constituted unlawful retaliation.  That is simply not the standard for a Title VII retaliation claim.  If it were, then any employee who engaged in protected activity would thereafter be shielded from normal workplace discipline.  *Cf. Sherrill v. Potter*, No. 06-4120, 2008 WL 5220291, at *2–3 (N.D. Ill. Dec. 9, 2008) ("At some point, employers must be free to rid themselves of employees that are failing to meet legitimate job expectations.").

are properly time-clocked, and because of Mr. Kitchens' specific directive regarding the implications of filing documents without first time-clocking the same and the disciplinary action that would result therefrom." [Doc. 41-3 ¶ 7.] Moffitt further avers the decision to suspend Plaintiff's employment was "based solely and exclusively on her clerical errors and faulty work." [*Id.* ¶ 8.] With respect to Plaintiff's termination, Moffitt avers this decision was "based solely and exclusively on [Plaintiff's] repeated clerical errors and faulty work" [*id.* ¶ 12] and was "[b]ecause of [Plaintiff's] history of clerical errors and her failure to correct her poor work performance even after numerous verbal warnings, a final written warning, and a suspension" [*id.* ¶ 11]. Accordingly, Defendants have fulfilled their burden to articulate a legitimate, nonretaliatory explanation for Plaintiff's suspension and termination.

However, Plaintiff has failed to demonstrate that Defendants' articulated reason was mere pretext. To prove an employer's articulated reason is a pretext for retaliation, a plaintiff "must prove '*both* that the reason was false, *and* that [retaliation] was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Here, Plaintiff fails to direct the Court to any evidence to establish Defendants' articulated reason for suspending and terminating Plaintiff was false or that retaliation was the real motivation in these disciplinary decisions. Aside from her statements that she did not specifically remember committing the clerical errors [*see* Doc. 41-1 at 6–18], nothing in the record supports an inference that Defendants' explanation was pretextual or that Church, Moffitt,

and/or Kitchens did not believe Plaintiff had made the clerical errors.[12]  Instead, the record

supports Moffitt's averments.  [*See* 41-1 at 30–46 (written reprimand and suspension and

supporting paperwork), 47 (Request for Personnel Action relating to suspension), 48–90

(examples of clerical errors), 91 (Request for Personnel Action relating to termination).]

Additionally, Plaintiff acknowledged the duties she was disciplined for not performing

properly were important duties and that Kitchens stressed the importance of being accurate

when processing documents.  [Doc. 41-1 at 2–4.]  Plaintiff further acknowledged she

understood she was being disciplined for faulty work for not clocking documents and filing

documents incorrectly.  [*Id.* at 10.]  Finally, that Defendants also disciplined other

employees for clerical errors around the same time supports a finding that Defendants'

articulated reason is not false.  Within a seven-month window of time around Plaintiff's

termination date, at least three other employees were suspended or terminated as a result

of clerical errors.[13]  [Doc. 41-3 at 5 ¶ 14, 6–16.]  Rather than direct the Court to evidentiary

---

[12]The Court notes Plaintiff failed to even point the Court to the cited deposition testimony.  However, the Court has reviewed the record before it and finds the only evidence that even remotely supports an inference that Defendants' articulated reason was pretextual is this deposition testimony.  Although Plaintiff testified she could not remember whether she committed the clerical errors, she also testified that some of the filing entries associated with the documents that were incorrectly filed or not clocked were in Plaintiff's handwriting.  [Doc. 41-1 at 10, 12, 16.]  This supports, at the very least, an inference that Church, Moffitt, and/or Kitchens believed Plaintiff made the clerical errors and, accordingly, fails to demonstrate Defendants' articulated reason for suspending and terminating Plaintiff was false or that  retaliation was the real motivation in these disciplinary decisions.  *See Macias Soto v. Core-Mark Int'l, Inc.,* 521 F.3d 837, 842 (8th Cir. 2008) (citations omitted) ("In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred."); *Holland,* 487 F.3d at 220 (stating whether employee actually engaged in misconduct is "irrelevant").

[13]Plaintiff does not dispute that these employees were disciplined but appears to argue either that they were disciplined to cover up Plaintiff's retaliatory discipline [Doc. 43-1 at 22 ("Approximately two weeks prior to Plaintiff's separation from employment, as a pre-textual cover-up for Defendants' discrimination and retaliation towards the Plaintiff, Defendants issued one of Plaintiff's co-workers . . . a written reprimand and three-day suspension for an alleged incident of misconduct but different than the situation involving the Plaintiff on July 18, 2006.")] or that the other employees' discipline is different from Plaintiff's discipline because none of the other three employees engaged in protected activity before they were disciplined [*id.*].  However, Plaintiff directs the Court to no evidence that these disciplinary actions were a coverup and instead

support to demonstrate Defendants' articulated reason is false and that retaliation was the real reason, Plaintiff again attempts to rely on conclusory statements alone [*see, e.g.*, Doc. 43-1 at 21 ("Thus, Plaintiff's testimony as well as the circumstances cast doubt on the Defendants' stated reason for the adverse employment actions.")], which are insufficient to create a triable issue of fact to survive summary judgment, *see Causey*, 162 F.3d at 802; *Evans*, 80 F.3d at 960; *Cook*, 988 F.2d at 513.  Accordingly, because Plaintiff has not established her prima facie case and, even if she had established her prima facie, she has failed to demonstrate Defendants' articulated reason is a pretext for retaliation, the Court recommends summary judgment be granted on Plaintiff's Title VII retaliation claim against Kitchens.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 41] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 18, 2011
Greenville, South Carolina

---

merely makes this bald assertion.  Additionally, that these other employees did not engage in protected activity is precisely what supports Defendants' legitimate, nonretaliatory reason for suspending and terminating Plaintiff's employment—indicating all the employees, including Plaintiff, were disciplined, at least in part, because they made clerical errors.